## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SUZANNA A. DERBABIAN and
EDWARD DERBABIAN

                Plaintiffs,

v.                                                          Case No. 13-CV-12836
                                                    Honorable Denise Page Hood

BANK OF AMERICA, NA. and
COUNTRY WIDE HOME LOAN, INC.,

                Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT [#8] AND DISMISSING THIS CASE WITH PREJUDICE

Plaintiffs filed their Complaint in Oakland County Circuit Court. On June 28, 2013, the case was removed to this Court. Now before the Court is Defendants, Bank of America, NA's (hereinafter "BANA") and Countrywide Home Loans, Inc.'s (hereinafter "Countrywide"), Motion to Dismiss. **[Docket No. 8, filed August 29, 2013]** On November 4, 2013, Plaintiffs Suzanna and Edward Derbabian filed a Brief in Opposition to the Motion to Dismiss. **[Docket No. 10]** On November 19, 2013, Defendants filed a reply to Plaintiffs' opposition. **[Docket No. 11]** For the reasons discussed below, Defendants' motion is **GRANTED**.

## I.    BACKGROUND

On or about February 23, 2005, Plaintiffs financed a loan for real property commonly known as 4572 Brightmore Road, Bloomfield Hills, Michigan, 48302-2120 (the "Property").  The first note and mortgage was for $633,750.00.[1]  **[Def. Ex. A]** The note provided that Plaintiffs would pay "a yearly interest rate of 1.000%" which "may change on the first day of April 2005, and on that day every month thereafter." **[Def. Ex. A]**  Plaintiffs also signed an Adjustable Rate Rider which stated the same. The Rider also apprised Plaintiffs that their "monthly payment may change . . . beginning on the first day of April, 2006, and on that day every 12th month thereafter."  On March 23, 2005, the Note and Mortgage were duly recorded with the Oakland County Register of Deeds.  *See* Liber 35179, Page 201.  On October 18, 2011, the Mortgage was assigned to The Bank of New York Mellon, a nonparty to this action.  **[Def. Ex. B]**  This assignment was recorded on November 14, 2011, with the Oakland County Register of Deeds.  *See* Liber 43567, Page 161.

At some time after assignment of the mortgage, Plaintiffs defaulted on payment of the loan.  Then mortgagee, The Bank of New York Mellon, foreclosed on the

---

[1] The Court notes that Plaintiffs' Complaint states that "On or about October 24, 2005 Plaintiffs . . . financed . . . the Property . . . [t]he first note and mortgage . . . for $650,000.00, and a second note and mortgage in the amount of $131,250.00." However, the documents filed with the Court provide that Plaintiffs executed a promissory note for $633,750.00.  There is no indication that Plaintiffs entered in to a second note and mortgage for $131,250.00.  There is also no indication of any note or mortgage signed "On or about October 24" as stated in the Complaint.

property and it was sold by Sheriff's sale on November 6, 2012.  **[Def. Ex. C]** Evidence of this sale was recorded with the Oakland County Register on November 20, 2012.  *See* Liber 44985, Page 315.  Pursuant to Michigan Law, M.C.L. § 600.3240(8), the period for Plaintiffs to redeem the property began the date of sale and extended for six months, or May 6, 2013.[2]  Plaintiffs did not redeem the property by this date.

On May 21, 2013, Plaintiffs filed a Complaint in Oakland County Circuit Court. This Complaint was removed, by Defendants, to this Court on June 28, 2013.  In their Complaint, Plaintiffs allege that Defendants failed to provide them with the proper disclosures required by the Truth in Lending Act ("TILA").  15 U.S.C. § 1607, *et seq.* Additionally, Plaintiffs contend that Defendants "failed to provide [them] a full package including, but not exclusive of, copies of the notes and mortgages, truth in lending disclosures, adjustable rate disclosures, and other materials required by Michigan and Federal statute."  **[Compl. ¶ 11]** Plaintiffs assert that Defendants' loan was in violation of state and federal law because: (1) the loan is a negative amortization loan, which is illegal under federal law, 15 U.S.C. § 1639(f); (2) payments for the fully-amortized loan, including principal, interest, insurance, and

---

[2]  This section states that "if the amount claimed to be due on the mortgage at the date of the notice of foreclosure is more than 66-2/3% of the original indebtedness secured by the mortgage, the redemption period is 6 months."

taxes, would have required them to utilize more than 50% of their net monthly income to remain current; (3) the loan indicated that their monthly payments, in total, would be less than required to fully amortize the loan; (4) the interest rates on the loan continued to fluctuate, both at the time of closing and after they closed on the home; (5) the appraisal, that the Defendants required that they purchase, established a value of the home at an amount that exceeded the amount of the loan; and (6) the appraisal neglected to account for the stagnant economy, failed to incorporate comparable sales within a reasonable distance, and failed to account for the drop in property values.

Plaintiffs further contend that when Plaintiff Suzanne Derbabian financed the loan, she was not aware that she was entering into a loan that was "not actually worth the amount represented." Notwithstanding, Plaintiffs contend that they continued to make their monthly payments. Plaintiffs argue that their balance continued to increase because Defendants failed to disclose, as required by TILA, that the monthly payments that were required were insufficient to amortize the loan. Plaintiffs state that Defendants wrongly instituted foreclosure proceedings without regard to their timely request for a modification agreement and without compliance with Michigan Law, Mich. Comp. Laws § 600.3205(2), nor an offer for modification. Plaintiffs request that the Court allow equitable tolling of the statute of limitation on their claim because the loan "intentionally violates state and federal laws." **[Compl. ¶ 17]**

4

## II.     STANDARD OF REVIEW

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]  Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Id.* at 555 (internal citations omitted).  Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard."  *Id.* at 563.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  Where a complaint pleads facts that are "merely consistent with" a

5

defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* at 683. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). In assessing the facial sufficiency of the complaint, the Court must ordinarily do so without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir .2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010).

6

The Court notes that even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335-36. Where plaintiffs do not refer directly to given documents in the pleadings, if those documents govern the plaintiffs' rights and are necessarily incorporated by reference then the motion need not be converted to one for summary judgment. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be incorporated and assessed without converting a motion to dismiss to a motion for summary judgment, even though the complaint referred only to the "plan" and not the accompanying documents). Additionally, "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010) (quoting *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36).

## III. ANALYSIS

Plaintiffs filed an eight count Complaint alleging: (1) fraudulent misrepresentations; (2) breach of contract; (3) violation of the Federal Real Estate Settlement Procedures Act (RESPA) and the Truth in Lending Act (15 U.S.C. § 1601, *et. seq.*); (4) violation of 15 U.S.C. § 1639; (5) violation of M.C.L. § 600.3205,*et.*

7

*seq.*; (6) quiet title; (7) slander of title; and (8) injunctive relief.  In their Motion to Dismiss, Defendants contend that Plaintiffs' Complaint should be dismissed, with prejudice, pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). Specifically, Defendants argue that the Complaint: (1) plead no basis to set aside the foreclosure sale; (2) is barred by the state of frauds; (3) fails to plead fraud with particularity; (4) does not sufficiently state claims under RESPA or TILA; (5) does not show how the foreclosure was improper and thus cannot state claims for slander of title nor seek quiet title; (6) fails to state a cause of action for injunctive relief; and (7) fails to comply with the "tender rule."

### A. Fraudulent Misrepresentation

Plaintiffs' first claim is that Defendants made false representations that Plaintiffs relied on which caused them "substantial economic loss."  A review of Plaintiffs' Complaint shows that they have not sufficiently alleged any fraud committed by Defendants.  The Sixth Circuit has interpreted Rule 9(b) as requiring plaintiffs to allege the time and content of the alleged misrepresentation on which they relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.  *See Yuhasz v. Brush Welman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).  Michigan law does not "allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by

8

advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity." *Overton v. Mortg. Elec. Registration Sys.*, 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009).

Plaintiffs' complaint does not show any fraud or irregularity in the sale itself. Though Plaintiffs did not attach any documentation to their Complaint, Defendants attached to their motion: (1) a copy of the note and mortgage, (2) a copy of the assignment of the mortgage, and (3) a copy of the sheriff's deed. As noted above, these documents were duly filed and examinations of the documents provided to the Court appear sufficiently complete to apprise Plaintiffs of the "true details of the Loan transaction." Upon review of Plaintiffs' Complaint, and viewing the allegations therein in the light most favorable to the Plaintiff, the Court is not satisfied that Plaintiffs have adequately plead a claim for fraud. Plaintiffs' response to Defendants' motion does not cure this deficiency as it also fails to specify any fraud committed by Defendants. Plaintiffs' claim for fraudulent misrepresentation is dismissed, with prejudice.

### B. Breach of Contract

Plaintiffs' next contention is that Defendants breached the contract they had with Plaintiffs regarding the loan for the property. As noted above, Plaintiffs entered into a loan agreement to purchase real property that they later defaulted on. Then

mortgagee and nonparty, The Bank of New York Mellon, instituted a foreclosure (by advertisement) on the property, pursuant to M.C.L. § 3204.  Plaintiffs contend that Defendants breached the contract "by failing to disclose material facts, by making false and misleading statements and by having Plaintiff[s] rely on a grossly inflated appraisal as set forth above."

To state a claim for breach of contract, Plaintiffs must show: (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract.  *See Life Care Centers of America, Inc. v. Charles Town Assocs. Ltd. Partnership, LPIMC, Inc.*, 79 F.3d 496, 514 (6th Cir. 1996).  Plaintiffs have failed to note what material facts Defendants failed to disclose and have not provided the Court with evidence of any appraisal, grossly inflated or otherwise.  Reviewing the pleadings, it appears to the Court that Plaintiffs breached their contract under the loan when they ceased making payments and defaulted.  Plaintiffs' breach of contract claim as to these requests for relief is dismissed.

As to Plaintiffs' breach of contract claim regarding false and misleading statements, to the extent that the Court reads Plaintiffs claim to contend that Defendants promised them a loan modification that was not offered, their claim must also fail.  In Michigan, the Statute of Frauds, M.C.L. § 566.132, precludes a party

10

from bringing any claim against a financial institution to enforce the terms of an oral promise. *See Snell v. Wells Fargo Bank*, 2012 WL 511995, at *9 (E.D. Mich. Feb. 16, 2012) (unpublished). In this case, Plaintiffs fail to submit any documentation to support a promise by Defendants to offer them the opportunity to enter into a loan modification agreement. Without written documentation of any alleged promise, the Court cannot rely on it to provide relief. Plaintiffs' breach of contract claim is dismissed in its entirety.

### C. Violation of RESPA and TILA

Plaintiffs next allege that Defendants violated the Federal Real Estate Settle Procedures Act, RESPA, and the Truth in Lending Act, TILA, 15 U.S.C. 1601, *et seq.* As to Plaintiffs' TILA claim, Defendants argue that Plaintiffs' claim must fail because it is time barred. TILA has a one-year statute of limitations. *See* 15 U.S.C. § 1640(e). Section 1640(e) states: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "[T]he statute of limitations begins to run 'when the plaintiff has a complete and present cause of action' and thus 'can file suit and obtain relief.'" *Thielen v. GMAC Mortgage Corp.*, 671 F. Supp. 2d 947, 953 (E.D. Mich. 2009) (quoting *Wike v. Vertrue, Inc.*, 566 F.3d 590, 593 (6th Cir. 2009) (internal quotations omitted)). Plaintiffs obtained the loan

on February 23, 2005, and did not file their complaint until May 21, 2013. Because this action was not commenced within one year, the statutory period has run and this claim is barred. *See Thielen*, 671 F. Supp. 2d at 953.

Plaintiffs also make an argument that Defendants violated RESPA, 12 U.S.C. § 2605, which controls the servicing of mortgage loans. Plaintiffs state that "[w]hen Defendant entered the Loan negotiations, no attempt was made . . . to give required notices and disclosures." However, Defendants attached to their motion an affidavit dated November 2, 2012, **[Def. Ex. C, at 9]** from Jennifer V. Sayegh, an attorney employed at Trott & Trott, P.C., which states that notice was given to Plaintiffs which included the reason for default, amount owed, contact information for mortgage holder, servicer, or any agent designated, and a statement of Plaintiffs' rights as borrowers. In their response, Plaintiffs fail to address this, instead restating that they did not receive "full packaging," noting that they were required to pay in excess of 50% of their net income to remain current, that the monthly payments were not sufficient to amortize the loan, and that the interest rate "kept changing." These assertions are not sufficient to maintain a RESPA claim as the notices and disclosures that Plaintiffs signed, namely the mortgage and note, state that the loan had an adjustable interest rate, that the payment amount would change, and that the "monthly payment could be less than the amount of the interest portion of the monthly payment

12

that would be sufficient to repay the unpaid principal."  For these reasons, Plaintiffs'
RESPA claim is also dismissed.

D.  **Violation of 15 U.S.C. § 1639**

Plaintiffs allege that Defendants violated the Home Ownership and Equity
Protection Act (HOEPA), 15 U.S.C. § 1639.  This Act prohibits extending credit
without regard to payment ability of a consumer.  The Home Ownership and Equity
Protection Act of 1994, 15 U.S.C. §§ 1602(aa), 1610, 1639, and 1640, was enacted to
amend TILA to provide greater protections and impose additional disclosure
requirements for "high-cost" or "high-rate" loans.[3]

Plaintiffs rely on 15 U.S.C. § 1639(h), which prohibits creditors from
"engag[ing] in a pattern or practice of extending credit to consumers under mortgages
referred to in section 1602(aa) of this title based on the consumers' collateral without
regard to the consumers' repayment ability, including the consumers' current and
expected income, current obligations, and employment."   Plaintiffs also claim

---

[3]  High-risk HOEPA loans are defined in 15 U.S.C. § 1602(aa)(1).  They encompass
"consumer credit transaction[s] that [are] secured by the consumer's principal
dwelling, other than a residential mortgage transaction, a reverse mortgage
transaction, or a transaction under an open end credit plan" in which a loan's annual
percentage rate at consummation exceeds by more than 10 percent the applicable yield
on Treasury securities, or when the total points and fees payable by the consumer
exceed eight percent of the "total loan amount," or $400, whichever is greater.  15
U.S.C. § 1602(aa)(i)(A)-(B).

13

violation of 15 U.S.C. § 1639(f) which states that a loan "may not include terms under which the outstanding principal balance will increase at any time over the course of the loan because the regular periodic payments do not cover the full amount of interest due." Though it appears to the Court that the loan states terms that could be construed to violate these sections of the HOEPA, claims under section 1602(aa) of HOEPA are subject to the same statutes of limitation that are applicable to TILA, which is one year from the date of the transaction. *See* 15 U.S.C. §§ 1635(f), 1640(e). The statute of limitations, therefore, bars this claim and it must be dismissed.

### E. Violation of M.C.L. 600.3204, et. seq.

Plaintiffs also allege violation of M.C.L. 600.3204, *et seq.*, and request that this Court essentially return their property to their possession. However, the property was sold at a Sheriff's sale on November 6, 2012, the redemption period having ended on May 6, 2013. Plaintiffs failed to redeem the property and have not, as discussed above, provided the Court with sufficient information regarding fraud or irregularity in the sale of the property.

Defendants have attached to their motion affidavits of publication that state that notice of the foreclosure was posted in the Oakland County Legal News on November 4, 2011 and again on February 29, March 7, March 14, and March 21, 2012. **[Def. Ex. C, at 5-6]** There is also an affidavit which states that evidence of the sale was posted

14

on March 5, 2012. **[Def. Ex. C, at 7]** Lastly, there are affidavits that state that the sale of the property took place on November 6, 2012, and that written notice, pursuant to M.C.L. 600.3205a(1)-(3), was given.

M.C.L. § 600.3205(c) provides the procedure for requesting a loan modification. Subsection (1) provides that "[i]f a borrower . . . contact[s] a person designated under section 3205a(1)(c) . . . , the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification." M.C.L. § 600.3205(c)(1). If the borrower is eligible for loan modification, the lender may not initiate foreclosure proceedings unless the lender has offered the loan modification program and the borrower failed to accept the agreement within 14 days. *Id.* at 600.3205(c)(7).

If foreclosure proceedings are initiated in violation of this statute, the borrower may ask the court to convert the foreclosure proceeding into a judicial foreclosure. *Id.* at 600.3205(c)(8). However, section 600.3205(c) does not authorize a court to set aside the foreclosure.[4] *See Adams v. Wells Fargo Bank*, 2011 WL 3500990, at *4

---

[4] Plaintiffs wrongfully rely on Sixth Circuit case *Mitan v. Fed. Home Loan Mortgage Corp.*, 703 F.3d 949, 953 (6th Cir. 2012) *petition denied*, 512 F. App'x 539 (6th Cir. 2013), stating

Because the foreclosure by advertisement violated Mich.

(E.D. Mich. Aug. 10, 2011) (unpublished) (Section 600.3205(c) "allows specified borrowers to convert a foreclosure by advertisement to a judicial foreclosure; it does not allow those borrowers to avoid a foreclosure altogether or set aside a completed foreclosure"); *see also Awad v. Gen. Motors Acceptance Corp.*, 302692, 2012 WL 1415166, at *2 (Mich. Ct. App. Apr. 24, 2012) *appeal denied*, 493 Mich. 905, 823 N.W.2d 276 (2012) (unpublished) (describing that a plaintiff's suit does not toll the redemption period).   Remedy under the provision must be sought prior to the foreclosure sale.[5]

> Comp. Laws § 600.3204(4)(f), he argues, it was void and the redemption period never began.  We agree with Mitan's interpretation of the law . . . . It follows that, as a matter of Michigan law, a lender that fails to follow the loan-modification procedures set forth by the statute has engendered a structural defect and is thus without authority to commence a foreclosure.  Without a valid foreclosure, the redemption period has not begun, and the owner of the property retains an interest conferring standing to sue.

*Mitan*, 703 F.3d at 953.  However, in *Mourad v. Homeward Residential, Inc.*, 517 F. App'x 360 (6th Cir. 2013), the Sixth Circuit noted that *Mitan* was abrogated by *Kim v. JPMorgan Chase Bank, NA*, 493 Mich. 98, 825 N. .2d 329 (2012).  *Mitan* is no longer good law and the Court cannot rely on it for the premise Plaintiffs present.

[5] *See Stein v. U.S. Bancorp*, 2011 U.S. Dist. Lexis 18357, 2011 WL 740537, at *27 (E.D. Mich. Feb. 24, 2011)

> The remedy available to the Steins under this provision . . . was one that they were required to specifically seek out prior to the consummation of the foreclosure by advertisement.  The provision allows certain borrowers to

16

The Court is not persuaded by Plaintiffs' claim that they did not receive the "required notices."  As evidenced in the affidavits attached to the Sheriff's Deed, the foreclosure sale complied with the requirements of M.C.L. § 600.3204(4).[6]

> determine the type of foreclosure proceeding, not to avoid foreclosure altogether or set aside an already-completed foreclosure.  Moreover, there is no evidence that the Steins availed themselves of this provision while they retained title, rights, or an interest in the property.  Their failure to do so cannot constitute the type of fraud, accident, or mistake that would be required to set aside the foreclosure.

*Id.*

[6]  M.C.L. 600.3204(4) states in pertinent part that:

> (4) A party shall not commence proceedings under this chapter to foreclose a mortgage of property claimed as a principal residence exempt from tax . . . if 1 or more of the following apply:
> Notice has not been mailed to the mortgagor . . . .
> (b) After a notice is mailed to the mortgagor . . . , the time has not expired for the mortgagor to request, either directly or through a housing counselor, a meeting . . . .
> (a)    (c) Within 30 days after a notice is mailed  . . . , the mortgagor has requested a meeting . . . and 90 days have not passed after the notice was mailed. This subdivision does not apply if the mortgagor has failed to provide documents as required under section 3205b(2).
> (e) The mortgagor has requested a meeting  . . . , the mortgagor has provided documents as required . . . , and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

17

Specifically, Jennifer Sayegh attests that Plaintiffs responded to the notices stating their rights as borrowers, requested a meeting pursuant to M.C.L. § 600.3205b, but that no agreement could be reached and they were not eligible for a loan modification. The Court notes that Plaintiffs have not alleged that negotiations for a loan modification failed to take place but, instead, that "no modification process was offered." Defendants were required to offer a loan modification if Plaintiffs were eligible for one. Here, it appears to the Court based on the information provided, that Plaintiffs were determined to be ineligible for a loan modification.

Even if the Court deemed the affidavits incredible, Plaintiffs have not shown the requisite prejudice required to set aside the foreclosure sale after it has already taken place. *See Kim v. J.P. Morgan Chase Bank, N.A.*, 493 Mich. 98, 115 (2012) (explaining that a borrower must show that he would have been in a better position to preserve his interest in the property if not for the defect in compliance with the statute). Plaintiffs have not stated that they could have otherwise redeemed the property or, in the alternative, are currently in the financial position to pay off the debt

---

(f) The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.

(g) Calculations under section 3205c(1)4 show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

owed and redeem the property if the foreclosure sale is deemed to have occurred

wrongfully and determined without effect.  This claim is also dismissed.

### F.  Remaining Claims for Quiet Title and Slander of Title

Plaintiffs have two remaining claims, quiet title and slander of title.

In Michigan a quiet title action is a statutory cause of action.  Michigan

Compiled Laws § 600.2932(1) states that "[a]ny person, whether he is in

possession of the land in question or not, who claims any right in, title to,

equitable title to, interest in, or right to possession of land, may bring an action

in the circuit courts against any other person who claims or might claim any

interest inconsistent with the interest claimed by the plaintiff."  The statute

"codifie[s] actions to quiet title and authorize[s] suits to determine competing

parties' respective interests in land." *Republic Bank v. Modular One LLC*, 232

Mich. App. 444, 448, 591 N.W.2d 335, 337 (1998), *overruled on other grounds*

*by Stokes v. Millen Roofing Co.*, 466 Mich. 660, 649 N.W.2d 371 (2002).  A

party seeking to establish clear title has the burden of proof in a quiet title

action and must make out a prima facie case that they have title to the disputed

property. *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet*

*Cnty. Rd. Comm'n*, 236 Mich. App. 546, 550, 600 N.W.2d 698, 700 (1999)

(citing *Stinebaugh v. Bristol*, 132 Mich. App. 311, 316, 347 N.W.2d 219

19

(1984)).  Here, Plaintiffs have presented no grounds upon which this Court could find that the assignment of the property was invalid. Plaintiffs signed the note and mortgage and defaulted.  The property was sold at a Sheriff's Sale and Defendants complied with the requirements of M.C.L. 600.3204, *et seq.* regarding foreclosure by advertisement.  Because Plaintiffs have not shown how their claim is superior to that of the Defendants' interest in the property, this claim is dismissed.

Slander of title claims in Michigan "have both a common-law and statutory basis." *B & B Inv. Group v. Gitler*, 229 Mich. App. 1, 8, 581 N.W.2d 17, 20 (1998).  Plaintiffs must prove the same three elements for both a common-law slander of title claim and a claim under M.C.L § 565.109: "falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *Id.* at 9, 581 N.W.2d 17.  In Michigan, special damages "include litigation costs, impairment of vendibility, and loss of rent or interest." *Id.* (internal citations omitted).  The Court restates that it is satisfied that the foreclosure sale was not done in violation of Plaintiffs' rights in the property. Additionally, Plaintiffs did not file their Complaint and attempt to cure any issue as to any rights to the property before the redemption period expired.

20

There is no indication that Defendants "maliciously published false statements that disparaged . . . [Plaintiffs'] right in [the] property" nor have Plaintiffs presented any evidence of "special damages."  For these reasons, Plaintiffs' slander of title claim is dismissed.

## IV.   CONCLUSION

Plaintiffs have failed to make any claims that can afford them relief.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Complaint **[Docket No. 12, filed August 29, 2013]** is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED**, with prejudice.

**IT IS SO ORDERED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  January 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 31, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

21